## Hovey *versus* Woodward.

Under a statute of 1786, the Legislature of Massachusetts granted, by a lottery, a large number of lots in fifty townships of land in Maine. Among other necessary proceedings the Act required a plan of each township, with the number of the lot drawn and of the ticket which drew it, to be inserted in a book, which should be authenticated by the signatures and seals of the managers. — *Held*, that a copy of their proceedings, showing no such authentication, is not sufficient evidence to maintain a title under the Act.

This result is not varied by the fact that, in the public offices where the documents should be kept, no higher evidence of title to any lot under the Act, can be found than that of the original, from which such copy was taken.

Although it may appear of record that an occupant of land obtained title to an undivided part of it through a succession of owners, the earliest of whom, in his conveyance, recited that the title was derived, under the lottery Act, such occupant is not estopped by such recital in his title deed, unless it appear, by the *legal testimony*, that a title to the land was acquired under the lottery Act, and that the occupant claims absolutely under that title.

On Exceptions from *Nisi Prius*, Howard, J. presiding.

An Act of Massachusetts was passed in 1786, authorizing the sale, by lottery, of fifty townships of land, including township number sixteen. It appointed five managers of the lottery, of whom Rufus Putnam was one.

The fourth section of the Act required them to lay down in a book, and number the townships and lots, and to return to the Secretary of State such book, with its plans and with a list of the prize lots, and of the tickets by which they were drawn; and "to sign the book, and annex their seals to their names respectively." The fifth section provided that the Secretary "shall enter and register in the same book, against the number of the ticket and of its prize lot, the name of the pro-

prietor of the ticket, with the place of his abode and his addition.

The third section provided that such registry should enure and operate to all intents and purposes as a grant of the lots, &c., and that an attested copy of such registry should be evidence of title.

This is an action of trespass, founded upon the Revised Statute, chap. 129, sect. 7 and 8, for cutting trees upon lot number ten, in said township number sixteen.

The plaintiff claims title by inheritance from his father, Ivory Hovey, to one undivided fifteenth of said lot number ten, containing 320 acres, and contends that the lot was drawn in the lottery by his said father and Jonathan Hamilton and John Lord. To prove that fact, he introduced a paper purporting to be a copy of a plan of township No. 16, divided into lots. The copy was taken from a book in the Land Office of Massachusetts. Subjoined to it are the words " Township No. 16, * * Attest Rufus Putnam." Upon its margin is written, " lot No. 10, 320 acres, number of ticket drawn against, 40," and against the lot under the head of " Proprietors' names, addition and place of abode," was written " Messrs. Jonathan Hamilton, Ivory Hovey and John Lord of Berwick in the County of York, Merchants."

It had not upon it the seals of either of the managers, nor the name or signature of either, except that of Putnam as above stated.

The Land Agent, in 1848, appended to it a certificate, signed by him, that the paper was a true copy of the original plan returned by Rufus Putnam, surveyor; and another certificate that it " is a true copy, as found in the record book, who drew lots in the land lottery, as laid down in said book, returned by the managers of the land lottery, under the third section of the Act of 9th Nov. 1786, which book contains the registry of the names of the proprietors of tickets in township 16, made by the Secretary of the Commonwealth, pursuant to the 5th section of said Act."

It was proved, that by virtue of a Resolve of the State, all

the books, plans and papers pertaining to the lottery lands, had been deposited by the Secretary with the Land Agent.

The plaintiff introduced the deposition of the Land Agent, George W. Coffin, Esq., taken by commission upon written interrogatories.

The Judge instructed the jury *that* they should examine the copy, and determine from inspection whether it purported to be a copy as required by the 3d and 5th sections of the Act of 1786, which were read to them ; — *that* it was essential to the validity of the document that the book containing the original, should have been signed and sealed by the managers ; and *that* the columns in the margin should have been made and certified by the Secretary of State.

The plaintiff requested instruction to the jury that, if satisfied that there existed in the archives of Massachusetts, no other records than those produced, of the proceedings and attestations by the managers and of the registry by the Secretary of State, they might consider the evidence before them sufficient to establish the plaintiff's claim. This instruction was refused.

The plaintiff requested instruction to the jury that, as Rufus Putnam, one of the managers, had attested the copy of the plan, they might after the lapse of more than sixty years, infer that all the other requisites to establish the title in the plaintiff's father, were duly complied with.

The Judge instructed the jury that, though the plaintiff, after so great a lapse of time, might not be held to prove that the managers were sworn, or to prove the formal accuracy of each minute particular in their proceedings, it was necessary for him to prove that the managers *did act*, and that that proof must be by some record, vouched by the managers and by the Secretary of State.

It appeared by a series of recorded deeds, used in evidence, that the defendant is a part owner of the lot in controversy, (No. 10,) and that his title is deduced from John Lord, under a deed which recites that the said lot No 10 was drawn, in the lottery, by said Lord.

The plaintiff thereupon requested instruction to the jury that, if the only evidence, which can be found upon the subject in the archives of the Commonwealth of Massachusetts, showed the lot to have been drawn by said Lord jointly with said Hovey and Hamilton, the defendant, by his title deeds, would be estopped to deny the title of said Hovey, the father of the plaintiff.

This instruction was refused, and the jury were instructed *that* the defendant, and his grantees, were not necessarily to be considered as claiming under the lottery Act; — *that*, before the defendant could be estopped by the recital in his title deed, it must appear that there were *some* proceedings under that Act, and especially that there was a plan or book to which the signatures and seals of the managers and the signature of the Secretary were affixed; — and *that* the defendant claimed absolutely under such proceedings.

The verdict was for the defendant, and the plaintiff excepted.

*Herbert*, for the plaintiff.

To uphold the rulings at the trial would be disastrous to a large number of our citizens. Tens and perhaps hundreds of thousands of acres are held under the lottery title. No evidence can be found upon which to sustain their claims, other than what we have introduced in this case. But we apprehend there is no ground for alarm. For the document we produced sufficiently shows a compliance with the calls of the lottery-statute.

There is upon the document, a registry of the number and contents of the lot, the number of the ticket against which it was drawn, and the names and residence of the plaintiff's ancestor and two other men, as "proprietors." As it was the Secretary's duty to make just such a registry, the registry offered must be presumed to have been made by him. But moreover, the land agent's certificate alleges that it was " made by the Secretary of the Commonwealth." And, as to those matters, the land agent is a certifying officer, having the records in his possession and control. 1 Greenl. Ev. sect. 485 and 507 ; Statute of U. S. of March 27th, 1804. So much

of the Judge's charge as required the jury to find the official attestation by the *Secretary*, was therefore, erroneous.

There is, then, no deficiency in the document, except it be as to the signatures and seals of the *managers*.

The doings of the managers and their plan now before us, are more than sixty years old. The instruction, requested by the plaintiff, that after so long a period, it might be inferred that all the proceedings were rightfully executed, should have been given. At any rate, the attestation by Putnam, being a part of the requirement, might be the basis of such an inference. *Pitts* v. *Temple*, 2 Mass. 538 ; *Stockbridge* v. *West Stockbridge*, 12 Mass. 400 ; *Proprietors of Monumoi Great Beach* v. *Rogers*, 1 Mass. 160 ; *Copp* v. *Lamb*, 12 Maine, 312 ; *Crooker* v. *Pendleton*, 23 Maine, 339 ; *Freeman* v. *Thayer*, 33 Maine, 76.

The statute of 1786 does not prescribe an attested copy as the *only* evidence. The Judge should have left it to the jury to say whether or not they were satisfied, from the evidence before them, that the plaintiff's father and others drew the lot, and produced the ticket to the Secretary within six months, and had it registered. Those acts would have passed the title. See sect. 3.

The requested instruction relative to the estoppel should also have been given. If a man is in possession of land, of which a deed to him is recorded, the presumption is, that he claims under the deed.

The jury might have found that the defendant made title under the very lottery ticket under which the plaintiff claims. He would, then, have been estopped to contest the plaintiff's title. 1 Greenl. Ev. sect. 23 and 24 ; *Ford* v. *Gray*, 1 Salk. 285 ; *Trevillian* v. *Lane*, 1 Salk. 276 ; Comyn's Dig. title Estoppel, 13 ; Co. Litt. 352, (a); *Penrose* v. *Griffith*, 4 Binney, 231.

The ruling was too broad, that before such an estoppel could apply, it should be shown that there were some proceedings under the Act, and especially that there was a plan or book to which the signatures and seals of the managers and the sig-

nature of the Secretary were affixed. So also was the ruling that the plaintiff was bound to show that the defendant absolutely claimed under the Lottery Act.

It would have been sufficient to instruct the jury that they must be satisfied he claimed or held under the lottery proceedings.

*Robinson,* for the defendant.

SHEPLEY, C. J. — The plaintiff as an heir at law of Iv or y Hovey, deceased, claims to be the owner of an undivided part of lot numbered ten in township numbered sixteen in the middle division of the lottery lands. The action is founded upon the statute, chap. 129, sect. 8.

The only evidence produced at the trial, of the title of the deceased to any portion of that lot, was a copy of a plan of that township as surveyed and lotted by Rufus Putnam, and attested by his signature, with the numbers of the tickets, by which the lots were drawn, and the names of the proprietors entered in columns upon it.

The Act, passed on Nov. 9, 1786, authorizing the sale of fifty townships of land by lottery, prescribed the acts to be performed to convey titles to the prize lots to the holders of the prize tickets.

By the fourth section managers were appointed, who were required to "lay down in a book, and number the townships and lots as aforesaid," to publish an account of the numbers and prizes, and to "return to the Secretary the book and plans aforesaid of the said townships and lots together with an account and list of the numbers and prizes drawn by the respective numbers in opposite columns, fairly entered therein, and sign the same book and annex their seals to their names respectively."

The fifth section provides, that the Secretary of the State "shall enter and register in the book so to be returned to him by the managers, against the number of such tickets, and the prize lot it may have drawn, the name of such proprietor," when the proprietor shall have produced the ticket to him.

The third section provides, that "such registry shall enure and operate to all intents and purposes as a grant of the same lots respectively, on behalf of the Commonwealth, to the proprietor or proprietors of the tickets so drawing the same, without any other or further deed or writing whatever ; and an attested copy of such registry shall be sufficient evidence of the party's title to the same."

The copy of the document produced does not exhibit any such authentication by the managers or any one of them of the book containing the numbers of the lots and tickets ; nor any evidence of an entry or registry by the Secretary of the names of the owners of the prize lots in such book.

There is therefore no copy produced of the document required by the statute, to operate as a grant of the lot.

It is insisted in argument, that the document, a copy of which · is presented, is the only evidence of title, which the owners of lottery lands can produce; and, that to refuse to regard it as sufficient, will deprive them of the means of establishing their titles.

If even such a result were to follow from the exclusion of the testimony, the Court could not receive as conclusive evidence of title, a document unauthorized by law. That would be an assumption of power to establish a title to real estate by any testimony, which it should please to regard as sufficient. If such inability to establish a title to lottery land should be found to exist, which is not anticipated, it might become necessary, that the legislature should determine, what should be sufficient evidence of title from the State of Massachusetts.

It is insisted further, that the defendant is estopped to deny, that Ivory Hovey, sen'r, was the owner of one third part of the lot.

The only foundation on which this position can rest is, that the heirs of John Lord on October 13, 1830, conveyed one third part of the lot to Andrew Peters, describing it as lot No. 10, in township No. 16, in the middle division of the lottery lands, originally drawn by John Lord. Peters

conveyed the same to Nicholas Little and others on April 5, 1833, and they conveyed the same to the defendant on Nov. 13, 1842.

There is no recital, statement or admission in any one of these conveyances, that Hovey was an owner of any part of the lot. By denying the title of Hovey the defendant is not obliged to contradict or to deny any fact stated in his own conveyance or in those, from which his title was derived. Nor was Hovey or any one of his heirs a party to any of these conveyances ; and estoppels must be mutual. There is, therefore, no foundation for the position.

It is not necessary to consider whether the admission or exclusion of testimony or the instructions in relation to damages were correct, for the plaintiff could not have been aggrieved by them.

The motion to set aside the verdict cannot prevail, for the plaintiff exhibited no legal evidence of title in himself.

*Exceptions and motion overruled,*
*and judgment on the verdict.*